UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARK O'BRIEN WILLIAMS,

    Plaintiff,

    v.                                          Case No. 02-C-940

CHARLES G. BRANN, WILLIAM OAKLEY,
MARK WINKEL, RANDY TASSOUL,
JEFF FARLEY, ALAN S. HUNSADER,
RAYMOND L. TAYLOR,
CHIEF DEPUTY BEHLING,
DOOR COUNTY JAIL, and
DOOR COUNTY SHERIFF'S DEPARTMENT,

    Defendants.

## ORDER

The plaintiff, Mark O'Brien Williams, commenced this civil rights action pursuant to 42 U.S.C. § 1983 on September 20, 2002.[1] The plaintiff was granted leave to proceed *in forma pauperis* on claims that the above-captioned defendants and Dr. Christopher Felton violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution. By order of May 30, 2006, the court granted Dr. Felton's second motion for summary judgment and dismissed all claims against him. *Williams v. Brann*, Case No. 02-C-940 (E.D. Wis. May 30, 2006).[2]

---

[1] Mr. Williams was incarcerated when he commenced this lawsuit but it appears he has recently been released. See O'Connor Affidavit, Ex. B (Williams Affidavit ¶ 2).

[2] Dr. Felton's first motion for summary judgment requested that the § 1983 claims and the state law claims against him be dismissed under the theory that such claims were barred by the applicable statute of limitations. By order of January 25, 2006, the court denied the motion as to the § 1983 claims but granted the motion as to the state law claims. *Williams v. Brann*, Case No. 02-C-940 (E.D. Wis. Jan. 25, 2006).

Presently before the court is the motion of defendants Door County Sheriff's Department, Sgt. William Oakley, Investigator Mark Winkel, Sheriff Charles Brann, Deputy Randy Tassoul, Deputy Jeff Farley, Chief Deputy Behling and Door County Jail (collectively referred to herein as the "Door County Defendants") for summary judgment. In addition, the plaintiff, who is now represented by appointed counsel, has filed a motion for reconsideration of the court's order of May 30, 2006, granting Dr. Felton's motion for summary judgment. Both motions will be addressed in this decision and order.

## I. MOTION FOR RECONSIDERATION

The plaintiff has filed a motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, seeking reconsideration of the court's May 30, 2006 order granting Dr. Felton's motion for summary judgment. While technically speaking there is no "motion for reconsideration" mentioned in the Federal Rules of Civil Procedure, Rule 60(b) enables a court to grant relief from a judgment under the particular circumstances listed in the rule. *Russell v. Delco Remy Div. Of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995). Those circumstances are:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b). In his motion, the plaintiff does not specify which of the six avenues for reconsideration warrants relief in this case. However, he makes it clear in his reply brief that he is seeking relief under the catch-all provision of Rule 60(b)(6). The extraordinary circumstances test is the proper test for determining whether the relief is appropriate under Rule 60(b)(6). *See Industrial Associates, Inc. v. Goff Corp.*, 787 F.2d 268, 269 (7th Cir. 1986).

The plaintiff argues that "in the interest of manifest justice," he is entitled to reconsideration of the May 30, 2006, order granting summary judgment in Dr. Felton's favor because he was not represented by counsel when he filed his response to the summary judgment motion and therefore, was not in a position to present the full factual and legal arguments in support of his claim. *(See* Plaintiff's Reply Brief to the Door County Defendants' and Dr. Felton's Opposition to Plaintiff's Motion for Reconsideration at 2.) The plaintiff maintains that he should be relieved from operation of the final order granting summary judgment in Dr. Felton's favor because otherwise he is "penalized for his *pro se* pleadings filed in Opposition to Dr. Felton's Motion." *Id.* at 3.

The plaintiff has cited no case law in support of his position. Moreover, the court agrees with Dr. Felton's contention that accepting the plaintiff's argument would provide for a rule of law allowing each *pro se* plaintiff who ultimately obtains counsel to have all prior adverse orders reconsidered. Accepting the plaintiff's argument would also be inconsistent with the well-established principle that the provision of Rule 60(b)(6) is inapplicable when attorney negligence is at issue. *See*

*Easley v. Kirmsee*, 382 F.3d 693, 700 n. 5 (7th Cir. 2004). It would be inequitable to allow a plaintiff to use one's *pro se* status, without more, to constitute exceptional circumstances under Rule 60(b)(6) when the controlling case law does not allow a plaintiff who is represented by counsel to invoke Rule 60(b)(6) in situations where his attorney provides inadequate or negligent legal assistance.

For these reasons, the plaintiff's motion for reconsideration will be denied.

## II. DOOR COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-71 (E.D. Wis. 1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of showing the needlessness of trial - (1) the absence of a genuine issue of material fact, and (2) an entitlement to judgment as a matter of law - is upon the movant. However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which

would support a reasonable jury verdict. *Anderson*, 477 U.S. at 267; *see also, Celotex Corp.*, 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56[c], except the mere pleadings themselves . . ."); Fed. R. Civ. P. 56(e) ("When a summary judgment motion is made and supported as provided in [Rule 56(c)], an adverse party's response, by affidavit or otherwise provided in [Rule 56(c)], must set forth specific facts showing that there is a genuine issue for trial"). "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322 (emphasis added).

**B. Analysis**

As previously noted, the court granted summary judgment in favor of Dr. Felton in connection with plaintiff's claim under 42 U.S.C. § 1983 that Dr. Felton performed a rectal exam upon him in violation of his constitutional right to be free from unwanted intrusions. That decision was based on the court's conclusion that Dr. Felton had not acted under color of state law when ordering and performing the rectal exam. The Door County Defendants assert that this ruling and the findings made therein constitute the "law of the case" and should govern the issue of whether the Door County Defendants ordered or worked in concert with Dr. Felton with respect to the exam.

In general, the law of the case doctrine establishes a presumption that a ruling made at one stage of the proceedings will be adhered to throughout the suit. *Alston v. King*, 157 F.3d 1113, 1116 (7th Cir. 1998) (citing *Messinger v. Anderson*, 225 U.S. 436, 444 (1912)).  Because the plaintiff has not presented the court with any compelling reason to disregard this presumption, the court will adhere to the findings in its decision and order of May 30, 2006, to the extent that such findings are relevant to the instant motion for summary judgment.

### 1. Relevant Undisputed Facts

The Door County Defendants included with their motion for summary judgment proposed findings of fact which they believe constituted the factual propositions upon which there is no genuine issue of material fact as required under Civil Local Rule 56.2(a).  The plaintiff filed objections to the proposed factual assertions and evidentiary material supporting those objections.  *See* Civ. L.R. 56.2(b)(1).  In addition, the plaintiff filed his own additional proposed factual findings as permitted under Civil Local Rule 56.2(b)(2).  The Door County Defendants, in turn, filed a reply to the plaintiff's objections and a response to the plaintiff's additional proposed factual findings.  *See* Civ. L.R. 56.2(c).  In deciding a motion for summary judgment, the court will conclude that there is no genuine issue as to any proposed factual finding to which there is no proper response.  *See* Civ. L.R. 56.2(e).

In view of the above, the court concludes that there is no genuine dispute concerning the following facts.  This case arises out of the arrest of the plaintiff after

-6-
Case 2:02-cv-00940-JPS   Filed 08/18/06   Page 6 of 18   Document 278

a traffic stop on September 7, 2001, which occurred after the defendant Officer Mark Winkel was notified by a confidential informant, Al Webster, that the plaintiff was going to be transporting two one-eighth ounce portions of cocaine from Milwaukee, Wisconsin to Green Bay, Wisconsin. (Plaintiff's Proposed Findings of Fact ["PPFF"] ¶ 1.) Defendants Special Agent Taylor and Special Agent Hunsader traveled to Green Bay to assist defendant Winkel with the investigation. (*Id.* ¶ 2.) Also assisting in the investigation and traffic stop were Connie May Schuster, Carl Waterstreet and defendants Jeff Farley and Randy Tassoul. (*Id.* at ¶ 3.) Defendant Farley's squad car was the vehicle that pulled over the Grand Am in which the plaintiff was riding. (*Id.* ¶ 4.)

After the plaintiff was removed from his vehicle, he was asked to lay down and to spread his arms and he was searched and then handcuffed by Special Agent Hunsader. (*Id.* ¶¶ 7-8.) The search of the plaintiff and his Grand Am produced $200 but no baggies of cocaine. (*Id.* ¶¶ 10-14.)

The arresting officers believed that the plaintiff had swallowed two plastic baggies of cocaine even though the plaintiff insisted he had "smoked [it] up." (*Id.* ¶¶ 26-30.)[3] Officer Farley, at the direction of Officer Winkel, radioed for the paramedics to come to the scene and said that it should be an emergency run, given the "possibility of an overdose." (*Id.* ¶¶ 32-34.) Officers Tassoul and Waterstreet went with the ambulance to the Door County Memorial Hospital ("DCMH") emergency room in Sturgeon Bay, Wisconsin, while Officer Farley

---

[3] The parties dispute whether Mr. Williams told Officer Waterstreet (who is not named as a defendant in this case) that he had swallowed the cocaine.

-7-
Case 2:02-cv-00940-JPS   Filed 08/18/06   Page 7 of 18   Document 278

followed the ambulance from the scene to the hospital in a separate vehicle. (*Id.* ¶ 36.)

When Officer Farley arrived at the DCMH, he observed the plaintiff lying on a cot. (*Id.* ¶ 37.) The Patient Progress Notes from the DCMH state that on September 7, 2001, at 10:50 p.m., "Pt is under arrest c̄ police officer in attendance. he is handcuffed to bed - ". (*Id.* ¶ 39.) Officer Winkel asked District Attorney Funnell if he could ask the hospital staff to perform a blood draw on the plaintiff and District Attorney Funnell informed him that it would be considered a legal search. (*Id.* ¶¶ 40-41.)

The DCMH personnel took an x-ray of the plaintiff which showed "'no foreign objects' or 'Baggies of Drugs'" in his system. *Williams v. Brann*, 02-C-940 at 5 (May 30, 2006); PPFF ¶ 44-46. The hospital personnel drew the plaintiff's blood and the drug screen was positive for cocaine. *Williams v. Brann*, 02-C-940 at 5 (May 30, 2006); PPFF ¶¶ 47-50. Officer Winkel maintained custody of the blood evidence until it was deposited in the blood evidence box later at the Sheriff's Department around 10:40 p.m. (PPFF ¶ 51.)

The medical history Dr. Felton obtained concerning the plaintiff on September 7, 2001, was that he was being brought into the emergency room for evaluation after possibly swallowing two plastic baggie-type containers of cocaine. *Williams v. Brann*, 02-C-940 at 4 (May 30, 2006); PPFF ¶ 58. Because Dr. Felton suspected possible drug ingestion, he performed a rectal examination on the plaintiff. *Williams v. Brann*, 02-C-940 at 5 (May 30, 2006). A rectal exam is

medically recognized and necessarily indicated to treat, assess, and evaluate a patient with a history of cocaine ingestion because cocaine, left undetected, can result in a life threatening situation. *Id.* The rectal exam did not reveal the presence of drugs. *Id.*

The rectal exam was not done at the direction of or by request of any state agent or agency, including the Door County Sheriff's Department, Door County Sheriff, Door County Sheriff Investigators, the Door County Jail or District Attorney Mark Funnel. *Id.* Rather, the rectal exam was done entirely at Dr. Felton's discretion as a physician in assessing, evaluating, and treating the plaintiff, a patient with suspected cocaine ingestion. *Id.* at 5-6.

When the rectal exam was being performed, Officer Tassoul was in the room but was on the other side of the curtain and therefore, did not see the exam being performed.[4] (O'Connor Affidavit ¶ 7, Ex. F; Tassoul Dep. Trans. 22:11-23:11.) The plaintiff's arms were handcuffed to the bed during the exam. (PPFF ¶ 63.) After the exam was performed, one of the medical personnel said "there's nothing," to Officer Tassoul. (*Id.* ¶ 65.) After the exam was conducted, Officer Winkel asked a hospital staff member whether the cocaine could have traveled where the x-rays would not pick it up and he was advised by that personnel member that the plaintiff had already been checked by the performance of a rectal exam and that no cocaine was found. (*Id.* ¶ 67-68.) Nevertheless, the Door County Defendants

---

[4]The parties dispute whether other officers and/or defendants were in the room during the rectal exam and whether two of the Door County Defendants held the plaintiff's legs open during the exam to facilitate the procedure. (PPFF ¶¶ 56-57 and 61-62; Defendants' Response to Proposed Findings of Fact ¶ 10-14.)

instructed hospital staff to monitor the plaintiff's excrement to see if he would void packets of cocaine. (*Id.* ¶¶ 69-71.)

### 1. Legal Analysis

The defendants argue that they are entitled to summary judgment on three separate grounds: (1) the court's May 30, 2006, decision in connection with Dr. Felton's motion for summary judgment warrants granting the Door County Defendants' motion for summary judgment; (2) the plaintiff's have failed to show that the Door County defendants were personally involved in the alleged constitutional violations; and (3) qualified immunity.[5]

In order to establish a claim under 42 U.S.C. § 1983, a plaintiff must establish that: (1) the defendant was acting under color of state law; and (2) the defendant deprived the plaintiff of a right or an interest secured by the Constitution or laws of the United States. *See Jones v. Wilhelm*, 425 F.3d 455, 465 (7th Cir. 2005); *Payne v. Churchich*, 161 F.3d 1030, 1039 (7th Cir. 1998). As noted previously, this court ruled in its May 30, 2006, order that the rectal exam was not done under color of state law because Dr. Felton, a private actor, ordered and performed the exam based on his own medical determination that the exam was necessary and that Dr. Felton did not act in concert with any Door County

---

[5]The Door County Defendants raised the issue of qualified immunity in a "Supplemental Brief in Support of Summary Judgment" which was filed on May 5, 2006. Plaintiff argues that the court should disregard this supplemental brief because Civil Local Rule 7.1 does not provide for supplemental briefing and it was filed four days after the deadline for filing dispositive motions. While the supplemental brief was filed after the dispositive motion deadline, the defendants did file their motion for summary judgment in a timely manner and the plaintiff had ample opportunity to respond to the issues raised in the Door County Defendants' supplemental brief. Therefore, the court will not grant the plaintiff's request to disregard the supplemental brief.

Defendants in ordering or performing the exam. The Door County Defendants argue that this ruling entitles them to summary judgment on the rectal exam claim because it establishes that they did not order the exam. In response, the plaintiff contends that, contrary to the May 30, 2006, order, there is a genuine issue of material fact regarding whether the rectal exam was conducted under color of state law because facts exist which show that Dr. Felton was an "unwitting agent" of the state. (Pl.'s Reply Brief to the Door County Defendants' and Dr. Felton's Oppositions at 4 n. 1.)

In general, before the conduct of a private party can be deemed to be state action, there must be a sufficiently close nexus between the State and the private conduct so that the action "may be fairly treated as that of the State itself." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349-50 (1974)). If a defendant's conduct meets the state action requirement of the Fourteenth Amendment, the conduct also satisfies the "under color of state law" element of a civil rights claim under § 1983. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Wade v. Byles*, 83 F.3d 902, 905 n.4 (7th Cir. 1996). Thus, the principal inquiry becomes whether the defendant's conduct is "fairly attributable to the State." *Lugar*, 457 U.S. at 937.

In making this determination, the United States Supreme Court has adopted a variety of tests which, according to the Court of Appeals for the Seventh Circuit, fall into two broad categories: (1) "situations where a state effectively controls, or encourages the actions of a private party"; and (2) when a State delegates a "public

-11-

function" to a private entity. *See Wade*, 83 F.3d at 905. The plaintiff's argument that state action can be found in this case relies on the first category. In this group of cases "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must be deemed to be that of the State." *Id.* (quoting *Lugar*, 457 U.S. at 935) (other citations omitted).

The issue here is whether the rectal exam was performed by a defendant acting under color of state law in violation of the plaintiff's constitutional rights. This court has already concluded that the exam was conducted by Dr. Felton, a private actor, and not "under color of state law." *(See Williams*, Order of May 30, 2006.) This ruling necessarily dooms plaintiff's claim that the Door County Defendants ordered the rectal exam and that Dr. Felton was coerced or controlled by those defendants when he performed the rectal exam. *Id.* at 8-9.

The arguments advanced by plaintiff against the instant motion for summary judgment are nothing more than a restated version of the arguments which the court previously rejected when it granted Dr. Felton's motion for summary judgment and the court has declined to reconsider that decision. For example, the plaintiff maintains that the following evidence shows that Dr. Felton was an "unwitting agent" of the state: (1) a staff member of the DCMH mentioned to the officers that "there's nothing" after the rectal exam was performed; and (2) two unidentified officers held the plaintiff's legs while the exam was being performed. The court previously ruled that such evidence did not amount to proof that Dr. Felton was in

-12-

anyway controlled or coerced by the Door County Defendants into performing the exam. *See Williams*, (Order of May 30, 2006, at 8-9) (citing *U.S. v. Shahid*, 117 F.3d 322, 326 (7th Cir. 1997).

In addition, the plaintiff asserts that a finding by this court that Dr. Felton was an "unwitting agent" of the state would not be inconsistent with the court's May 30, 2006, decision granting summary judgment in Dr. Felton's favor. Such assertion is illogical insofar as that decision was premised on the conclusion that the undisputed evidence did not show that Dr. Felton was coerced, either overtly or covertly, by the Door County Defendants to perform the rectal exam. Furthermore, the plaintiff does not cite to any case law to support his apparent contention that private actors can unknowingly be manipulated into becoming state actors. Indeed, case law relating to Fourth Amendment searches and seizures requires some knowledge on the part of the private actor of the government's control. *See e.g., U.S. v. Shahid*, 117 F.3d 322, 327 (7th Cir. 1997) (citing *Feffer*, 831 F.2d at 737) (appellate court acknowledged that the government may not do, through a private individual that which it is otherwise forbidden to do and expounded on the principle by describing situations where the government knew of and acquiesced in the private party's conduct and the "private party . . . expect[ed] some benefit (e.g., receiving a reward from the government) from taking the action), or expect some detriment (e.g., getting in trouble with government authorities) from not acting.").

In light of the above, the court finds that the Door County Defendants are entitled to summary judgment on the plaintiff's claim that his constitutional rights were violated when a rectal exam was ordered and performed on him.

In addition, to the extent that the plaintiff is alleging that the Door County Defendants are liable under § 1983 for facilitating the exam by restraining his legs, those defendants are entitled to qualified immunity on such a claim.[6] The doctrine of qualified immunity provides that government officials performing discretionary functions are immune from suit if "their conduct 'could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Sornberg v. City of Knoxville*, 434 F.3d 1006, 1013 (7th Cir. 2006) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987)). Qualified immunity protects a defendant from liability as well as from the burden of standing trial. *Borello v. Anderson*, 446 F.3d 742, 746 (7th Cir. 2006). Hence, courts should determine as early on in the proceedings as possible whether a defendant is entitled to qualified immunity. *See Sornberg*, 434 F.3d at 1013; *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).

In evaluating a claim of qualified immunity, a court conducts a two-step inquiry: "First the court must determine whether the disputed conduct, as alleged,

---

[6] It is unclear to the court whether the plaintiff is pursuing a separate § 1983 claim based on the alleged restraint of his legs by two of the Door County Defendants or whether these allegations were offered merely as proof that the Door County Defendants ordered the rectal exam. For purposes of this motion for summary judgment, the court will construe such allegations as a separate claim. Further, the Door County Defendants dispute that any of them were in the room when the rectal exam was performed and that any of them facilitated the exam by restraining the plaintiff's legs. Nevertheless, for purposes of their qualified immunity argument, the Door County Defendants assume that plaintiff is able to establish that two of the defendants restrained him during the procedure.

-14-

violates a constitutional right; second, the court must determine whether that right was 'clearly established' at the time of the alleged conduct." *Borello v. Allison*, 446 F.3d 742, 746 (7th Cir. 2006) (quoting *Wernsing v. Thompson*, 423 F.3d 732, 742 (7th Cir. 2005) (citing *Saucier*, 533 U.S. at 201). The court is required to consider the two steps in the proper order. *See Saucier*, 533 U.S. at 201.

In support for their contention that they are entitled to qualified immunity, the Door County Defendants point to the recent decision of the Court of Appeals for the Seventh Circuit in *Sullivan v. Bornemann*, 384 F.3d 372 (7th Cir. 2004), in which the appellate court held that two police officers who restrained the plaintiff during a catheterization ordered by the attending physician in order to obtain a urine specimen were entitled to qualified immunity. In this case, which involved facts very similar to those in the instant case, the plaintiff was arrested and charged with disorderly conduct. A pat-down search of the plaintiff uncovered a marijuana pipe and a breathalyzer test revealed that the plaintiff had consumed a large amount of alcohol. The plaintiff was transferred to a medical facility to obtain a medical clearance before the jail would admit him. *Id.* at 373-74.

At the medical facility, the attending physician ordered a nurse to obtain a urine sample. The nurse asked the plaintiff to produce one voluntarily but he was unable to do so. The nurse was then ordered by the attending physician to obtain a sample by catheterization. The plaintiff objected to this procedure. *Id.* at 374-75. As a result, one officer restrained the plaintiff by putting his arms and upper body across the plaintiff's legs and the other officer used a pressure point technique to

minimize the plaintiff's movement. *Id.* While the officers restrained the plaintiff, the nurse passed the catheter up the plaintiff's urethra and into his bladder to obtain the urine sample. *Id.* Subsequently, the plaintiff was transported back to the jail for processing. *Id.*

The plaintiff filed suit under § 1983 against the two police officers for restraining him during the procedure and against the attending physician, the nurse, and the medical facility. The district court granted summary judgment on the § 1983 action against the doctor, nurse, and medical facility because the conduct alleged was not done under color of state law. In addition, the district judge dismissed the federal claims against the two officers on qualified immunity grounds.

On appeal, the appellate court concluded that the actions of the two officers did not violate the plaintiff's rights under the Fourth Amendment and affirmed the district court's finding that the two officers were entitled to qualified immunity.[7] In so holding, the court explained:

> There is no rule to the effect that law enforcement officials are constitutionally prohibited from briefly restraining a detainee at the direction of qualified medical personnel, with the purpose of minimizing injury to the detainee. Under the circumstances here, which we have already recounted, the officers' actions were entirely reasonable. As the district court correctly noted in its discussion of the qualified immunity defense, a holding to the contrary would place law enforcement officers in the impossible position of having to second guess the medical judgments of emergency room physicians. Police officers like [the defendants] should not be at risk of liability under § 1983 for medical decisions made exclusively by the emergency room physician.

---

[7]The plaintiff did not appeal the district court's decision to grant summary judgment in favor of the hospital defendants. *Id.* at 377.

Id. at 377. The plaintiff has not addressed the court's holding in *Sullivan* nor has he made any attempt to distinguish that case from the one at hand.

Based on the appellate court's holding in *Sullivan*, this court finds that even if the plaintiff established that two of the Door County Defendants restrained him during the medical procedure, such conduct does not violate the plaintiff's Fourth Amendment rights. The plaintiff himself alleged that the restraint was used to facilitate the rectal exam. Further, the court has previously concluded that the rectal exam was performed at the sole discretion of Dr. Felton for the purposes of assessing, evaluating, and treating the plaintiff for a suspected overdose. Pursuant to the holding in *Sullivan,* such conduct is not prohibited by the Fourth Amendment. Therefore, the doctrine of qualified immunity also entitles the Door County Defendants to summary judgment on this claim.

Accordingly,

**IT IS ORDERED** that the Door County Defendants' "Motion for Summary Judgment of the Rectal Exam Claim Under 42 U.S.C. § 1983" be and the same is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's claims under 42 U.S.C. § 1983 against the Door County Defendants relating to the rectal exam be and the same are hereby **DISMISSED**, with prejudice.

Dated at Milwaukee, Wisconsin, this  18th  day of August, 2006.

BY THE COURT:

 s/ J. P. Stadtmueller
J. P. Stadtmueller
U.S. District Judge